BENNETT & Co., *vs.* WOLCOTT, Plaintiff in Error, and ROBINSON, Defendant in Error.

1. A party in possession of personal property under a purchase from a *mortgagee* is not rendered liable to garnishment on execution, as a debtor of the mortgagor, by the fact that the mortgage was not acknowledged and recorded, nor followed by the possession of the mortgagee, as required by the 8th section of the act concerning fraudulent conveyances, (R. C. 1845,) there being no fraud in fact. Whether the purchase was from the mortgagor or mortgagee, is a question of fact for the jury.

*Error to St. Louis Circuit Court.*

This was a petition in the nature of a bill of interpleader, filed by O. Bennett & Co., against Robert Robinson, jr., and John B. Wolcott. The claims of the respective defendants are stated in the opinion of the court. At the trial, the mortgage from Robinson 3d to Robinson, jr., was offered in evidence, and also the record of the judgment in favor of Robinson, jr., against the plaintiffs, for the price of the goods purchased by them, to the admission of both which Wolcott excepted. The date of the mortgage was November 1, 1850, and it was recorded November 5th, without being acknowledged, and was acknowledged November 23d. The goods were sold to plaintiffs November 20, 1850, and they were summoned as garnishees under the execution in favor of Wolcott against Robinson 3d, November 22, 1850. The mortgage purported to convey not only all the goods then composing the stock of Robinson 3d, but also those " which might be added thereto in the course of trade," at any time before default. There was no dispute, however, that the goods bought by plaintiffs were covered by it. It purported to be executed, not only to secure an indebtedness from the son to the father, but also to secure the father against contingent liability as indorser of the son. Robinson, jr., offered to show actual notice of the mortgage to Wolcott before the date of the sale to plaintiffs, but this evidence was excluded. Both Robinson, jr., and his son,

were at the store where the goods were kept, at the time of the sale to plaintiffs. Under the instructions of the court below, the substance of which appears in the opinion of the court, there was a verdict and judgment awarding the money brought into court by the plaintiffs to Robinson, jr. Wolcott sued out this writ of error.

*Knox & Kellogg,* for Wolcott. 1. The mortgage was not valid against Wolcott, as a creditor of Robinson 3d, because not acknowledged before the plaintiffs were summoned as garnishees. R. C. 1845, ch. 67, §8. 16 Pick. 33. *Travis* v. *Bishop,* 13 Met. 304. 17 Wend. 494. 2. Wend. 596. 2. The record of the judgment of Robinson, jr., against the plaintiffs was not admissible against Wolcott, who was not a party thereto. 3. The mortgage from Robinson 3d to Robinson, jr., of all his stock and property, to secure against a *contingent* liability, allowing the mortgagee to dispose of the goods as he thought proper, without any security to the creditors that the goods would be faithfully applied, was void, as against the policy of our law regulating assignments. The attempt to cover subsequently acquired property is itself evidence of bad faith. 13 Met. 17, 29. 10 Met. 481. 4 Met. 395. 3 Met. 117. 2 Wend. 596. 4. By the terms of the the mortgage, Robinson, jr., had no right to the possession of the property until some months after the sale to Bennett & Co. It does not appear that there had been any default on the part of the mortgagee at that time. 5. The mortgage provides that Robinson 3d should keep possession of the goods and sell as absolute owner, and this, of itself, renders it void. 6. Evidence to show actual notice of the mortgage to Wolcott was properly excluded.

*T. T. Gantt,* for Robinson, jr. Under the instructions given by the court below, in order to find for Robinson, jr., the jury had to find that the mortgage was not made in bad faith, and that Robinson, jr., sold and delivered the goods to the plaintiffs prior to the garnishment. The instructions necessarily included the idea of delivery to Robinson, jr., under

the mortgage. The mortgage really cuts no figure in the case, because, Robinson 3d being indebted to Robinson, jr., it made no difference whether he delivered the goods to him in payment of the debt, or delivered them to a third party with the agreement that he should pay the price to Robinson, jr. So that, whether plaintiffs purchased the goods of Robinson, jr., or Robinson 3d, in neither case did they become the debtors of Robinson 3d.

*Glover & Richardson*, for O. Bennett & Co.

GAMBLE, Judge, delivered the opinion of the court.

In this case, the plaintiffs acknowledge themselves to be indebted for merchandise purchased by them, but state that the money is claimed by Robinson, jr., and by Wolcott, who is a creditor of Robinson 3d. They therefore file their petition, bringing in the claimants to interplead, in order that the plaintiffs may pay the money to the person entitled to it. Robinson, jr., who is the father of Robinson 3d, claimed to be a large creditor of his son. A mortgage was made by the son to the father for the merchandise in the store of the son, the condition of which allowed the son twelve months from its date to discharge the indebtedness, and upon his failure to pay, authorized the father to take possession of the property and dispose of it by public or private sale, for cash or on credit. This mortgage was executed, and was recorded without being acknowledged, and was afterwards acknowledged. It appeared in evidence that the father was in the store in which the merchandise was kept, for some two months previous to the sale made to the plaintiffs, and it was claimed at the trial that he sold the goods to the plaintiffs. Before the petition in this case was filed, he had sued the plaintiffs for the amount of the goods sold, and had recovered judgment against them.

Wolcott, the other defendant, obtained a judgment against Robinson, the son, and on the day after the sale to the plaintiffs, he issued a *fi. fa.* and the plaintiffs were summoned as

garnishees thereon. The date of the sale of the goods to the plaintiffs was after the mortgage from the son to the father, and after it was informally recorded, and before the execution of Wolcott was issued.

The instructions given by the court, on its own motion, told the jury that, if the mortgage was made with intent to hinder or delay the creditors of the son, it was absolutely void; but if it was a fair and *bona fide* transaction between the parties thereto, and if the father, acting under the authority conferred upon him therein, and to carry out the objects of the deed, sold and delivered to the plaintiffs property embraced in the mortgage, such sale and delivery passed the title to the plaintiffs, who became bound to the father for the price thereof, and the credit in their hands was not subject to be attached by the creditors of the son.

The instructions asked by Wolcott, as they appear upon this record, are so full of mistakes as to render some of them absurd. The first which was given, tells the jury that the authority given in the deed, to sell upon credit, and the sale to Bennett & Co., on credit, are circumstances tending to prove that the deed was void as to creditors of the son. The second instruction asked, which was refused by the court, must contain some mistake; for it is perfectly inconceivable that the counsel for Wolcott could have asked the court to tell the jury that, upon a certain state of facts, the credit in the hands of Bennett & Co. was not subject to be attached by the creditors of Robinson, the son, when he was himself, at the time of the trial, the only creditor of Robinson, the son, endeavoring to hold the fund by summoning Bennett & Co. as garnishees. So, in the fifth instruction, there is such confusion in the use of the names, Robinson, jr., and Robinson 3d, in the conclusion of the instruction, as to render the whole unintelligible.

The question of fraud in fact, in the transaction between the father and son, was distinctly put to the jury in the first instruction given by the court, and in the instruction given at the request of Wolcott, the court gives the jury the view of the

law entertained by the counsel of Wolcott, in relation to the effect of the power given in the deed to sell upon credit.

1. The point which appears to have been most relied upon, arises upon the fact that, when Bennett & Co. were summoned as garnishees, the mortgage from Robinson, the son, to his father, had not been regularly recorded.

The eighth section of the act concerning fraudulent conveyances, declares that no mortgage or deed of trust of personal property, shall be valid against any other person than the parties thereto, unless possession of the property be delivered and retained by the mortgagee, trustee, or *cestui que trust*, or unless the instrument shall be acknowledged or proved and recorded in the county of the grantor's residence, in the same manner as is required by law in relation to conveyances of land. So far as this section is concerned, the mortgage in question was valid between the parties, at the time of the sale and delivery of the goods to Bennett & Co., and they were purchasers for valuable consideration, with possession of the goods. All the parties to this proceeding admit that the title passed to the purchasers, and as far as Wolcott is concerned, it would be fatal to his claim to deny that the title passed, for he can only proceed against a garnishee on a *fi. fa.*, who is a debtor of his debtor. *Vanwinkle* v. *McKee*, 7 Mo. Rep. 435. And if the title did not pass to Bennett & Co., then he cannot recover against them as garnishees. The eighth section of the statute was designed, as all other similar provisions in other statutes are designed, to protect the interests of third persons, acquiring an interest in, or lien upon the property mortgaged. It requires, in order to give notoriety to the transaction, either that possession shall be taken and retained, or that the mortgage shall be recorded, so that other persons, dealing with the property as the property of the mortgagor, may not be taken by surprise. The person who never acquires a right to, or a lien upon the property, has no interest in the question whether the deed of mortgage has been recorded or not. Here the sale to Bennett & Co. is to be taken, as to

Wolcott on his garnishment, to be effectual to pass the title, and therefore, as the sale was before his execution issued, he never had any interest in the question whether the mortgage was recorded or not. The cases cited by the counsel for Wolcott are cases in which the title to the property mortgaged was involved, the parties claiming a right in the property against the mortgagee. In the present case, Robinson, the father, presents himself in the attitude of vendor of the goods, saying that he sold them to Bennett & Co., and the second instruction given by the court puts that, as a question of fact, to the jury. It is not the case of a sale by Robinson, the son, and the father coming in to claim the proceeds, under his mortgage; at least, Robinson, the father, asserts that it is not such a case, and there is evidence upon that point. In a case of this kind, it would have been improper, and would probably have misled the jury, to have given the instruction that the mortgage was invalid for want of being recorded, and for want of such possession as is described in the fifth instruction of the defendant, Wolcott. That the father claimed to be the seller of the goods, is shown by the fact that he sued Bennett & Co., and recovered in that character. While such recovery was not conclusive of the fact, as against Wolcott, it showed the foundation of his claim—the relation he professed to sustain to the plaintiffs. If Bennett & Co. then purchased from the father, they became his debtors, whether the mortgage was recorded or not. The real questions in the case were, whether the transaction between the son and the father was fraudulent as to the creditors of the son, and if it was not, whether the plaintiffs purchased the goods from the father or the son, and these questions were put to the jury in the instructions given. Wolcott can only, on his process, reach the proceeds of the sale, by showing that the son remained in the possession and sold the goods to the plaintiffs, so that they became his debtors.

The judgment in favor of Robinson, the father, against Bennett & Co., was objected to, when offered in evidence, but it is to be observed, that this very judgment is stated in the peti-

tion of the plaintiffs, and this was a petition in the nature of a bill of interpleader, where each party was at liberty to show the condition of his own case. Moreover, the answer of Wolcott admitted the fact of the recovery, as the allegation in the petition was neither denied nor avoided.

The judgment is affirmed.