# Illinois Official Reports

## Supreme Court

---

### *In re Hernandez*, 2020 IL 124661

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* ELENA HERNANDEZ. |
| Docket No. | 124661 |
| Filed | January 24, 2020 |
| Decision Under Review | Certified question from the United States Court of Appeals for the Seventh Circuit; heard in that court on appeal from the Unites States District Court for the Northern District of Illinois, Chief Judge Andrea R. Wood, the Hon. Diane S. Sykes, and the Hon. Michael Y. Scudder, Judges, presiding. |
| Judgment | Certified question answered. |
| Counsel on Appeal | Richard D. Grossman, of Chicago, for appellant. |
| | Alan J. Mandel, of Alan J. Mandel, Ltd., of Skokie, and Allan A. Ackerman, of Chicago, for appellees. |
| | Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Sarah A. Hunger and Mary C. Labrec, Assistant State's Attorneys, of Chicago, of counsel), *amicus curiae*. |
| | Kari Beyer, Miriam Hallbauer, and David S. Yen, of LAF, of Chicago, and James J. Haller, of National Association of Consumer Bankruptcy Attorneys, *amici curiae*. |

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Burke and Justices Thomas, Kilbride, Garman, Theis, and Neville concurred in the judgment and opinion.

## OPINION

¶ 1    The United States Court of Appeals for the Seventh Circuit has certified for instruction by this court the following question of Illinois law: After the 2005 amendments to section 8 of the Workers' Compensation Act (Act) (820 ILCS 305/8 (West 2016)) and the enactment of section 8.2 of the Act (*id.* § 8.2), does section 21 of the Act (*id.* § 21) exempt the proceeds of a workers' compensation settlement from the claims of medical-care providers who treated the illness or injury associated with that settlement?

¶ 2    We accepted the Seventh Circuit's invitation to consider this question pursuant to Illinois Supreme Court Rule 20 (eff. Aug. 1, 1992). We subsequently granted leave to the People of the State of Illinois and to the National Association of Consumer Bankruptcy Attorneys (NACBA) and the Legal Assistance Foundation of Metropolitan Chicago (LAF) to file *amicus curiae* briefs in support of the position taken by Elena Hernandez, the debtor whose settlement proceeds are at issue. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 3    For the reasons that follow, we answer the question posed by the Seventh Circuit in the affirmative. Under section 21 of the Act, the proceeds of a workers' compensation settlement are still exempt from the claims of medical-care providers who treated the illness or injury associated with that settlement.

¶ 4                                    BACKGROUND

¶ 5    We take the facts as the Seventh Circuit has stated them in its certification ruling. See *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 3; *Yang v. City of Chicago*, 195 Ill. 2d 96, 98 (2001). Between 2009 and 2011, Elena Hernandez sustained on-the-job injuries and received medical treatment from Ambulatory Surgical Care Facility, Marque Medicos Fullerton LLC, and Medicos Pain and Surgical Specialists, S.C. In December 2016, she filed a voluntary Chapter 7 bankruptcy petition in the Northern District of Illinois. In that petition, Hernandez reported unsecured claims held by the three health care providers we have just mentioned. She owed $28,709.60 to Ambulatory Surgical Care Facility, $58,901.20 to Marque Medicos Fullerton LLC, and $50,161.26 to Medicos Pain and Surgical Specialists, S.C. She reported minimal assets, listing $1300 in bank accounts, some inexpensive jewelry, and her pending workers' compensation claim, which she valued at $31,000.

¶ 6    Two days after filing her petition, Hernandez settled her workers' compensation claim with her employer. The settlement amount appears to have been $30,566.33. Hernandez entered into the settlement without consulting the bankruptcy trustee. The reason she did not consult the trustee is that she believed the full amount of the settlement was exempt under section 21 of the Act (820 ILCS 305/21 (West 2016)). That statute provides, in relevant part:

"No payment, claim, award or decision under this Act shall be assignable or subject to any lien, attachment or garnishment, or be held liable in any way for any lien, debt, penalty or damages, except the beneficiary or beneficiaries of a deceased employee who was a member or annuitant under Article 14 of the 'Illinois Pension Code' may assign any benefits payable under this Act to the State Employees' Retirement System." *Id.*

¶ 7    The health care providers objected to this exemption on the grounds that certain amendments made to the Act in 2005 empowered them to reach her settlement. They also urged the court to disallow the exemption on grounds that the settlement was the product of fraud.

¶ 8    In April 2017 the bankruptcy court heard arguments on the question. During the hearing, the judge focused on process-based concerns regarding Hernandez's settlement—including her failure to notify interested parties or the trustee—rather than the statutory arguments raised by the parties. In the end, the judge summarily denied the exemption without a written opinion.

¶ 9    Hernandez appealed to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 158(a)(1) (2012). *In re Hernandez*, 17 CV 3230, WL 1469000 (N.D. Ill. Mar. 26, 2018). The district court affirmed in an opinion focused exclusively on the relationship between section 21 of the Act (820 ILCS 305/21 (West 2016)) and the 2005 amendments to that Act codified in sections 8 and 8.2 (see Pub. Act 93-721, § 70 (eff. Jan. 1, 2005); Pub. Act 94-277, § 10 (eff. July 20, 2005); Pub. Act 94-695, § 5 (eff. Nov. 16, 2005)). *In re Hernandez*, WL 1469000.

¶ 10    Relying on *In re McClure*, 175 B.R. 21 (Bankr. N.D. Ill. 1994), the district court held that, under section 21, workers' compensation claims are exempt from a debtor's bankruptcy estate against general creditors. *In re Hernandez*, WL 1469000, at *2. It concluded, however, that the 2005 amendments "significantly altered" the Act as it pertains to health care providers, striking a "balance" by limiting what providers can charge while allowing them to resume collection efforts following a settlement. *Id.* at *3. Professing to read the Act as a " 'harmonious whole' " and citing interpretive canons against surplusage and absurdity, the district court rejected Hernandez's argument that the 2005 amendments had no bearing on the exemption created by section 21. *Id.* (quoting *Food & Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). In the district court's view, those amendments now permit health care providers to collect payment for their services from an injured employee once the employee's disputed claim has been resolved with the employer. According to the district court, a contrary interpretation was unreasonable because it would undermine a key purpose of the amended Act, namely, ensuring payment for care providers. *Id.*

¶ 11    Hernandez's motion to alter or amend the judgment was rejected following a hearing, and she appealed to the United States Circuit Court for the Seventh Circuit. *In re Hernandez*, 918 F.3d 563 (7th Cir. 2019). Before the Seventh Circuit, the parties agreed that, historically, section 21 of the Act created an exemption for workers' compensation claims and awards under Illinois law and that such claims and awards were therefore beyond the reach of creditors in bankruptcy proceedings. *Id.* at 568. The point was not contested. Rather, as in the district court, the dispute centered on whether the exemption remained in effect after the Act was amended in 2005 with respect to collection efforts by a debtor's health care providers. *Id.*

¶ 12    Noting that neither our court nor our appellate court has yet addressed the interplay between section 21 of the Act and the 2005 amendments, the Seventh Circuit undertook its

own examination of the language of those provisions in light of standard principles of statutory construction and determined that there was support for both sides of the issue. *Id.* at 569-70. It could find no clear path forward. Because of this uncertainty, because it believed the issue to be one of vital public concern, and because resolution of the question is essential to correct disposition of the case before it, the Seventh Circuit asked this court to answer the certified question we set out at the beginning of the opinion. *Id.* at 570-71. As noted, we have accepted that request. The federal proceedings have been stayed pending our ruling.

¶ 13                                    ANALYSIS

¶ 14        The exemption claimed by Hernandez and opposed by her health care providers arises in the context of a federal bankruptcy proceeding. Section 522(b) of the Bankruptcy Code (11 U.S.C. § 522(b) (2012)) allows debtors such as Hernandez to exempt certain property from the bankruptcy estate. While federal law contains provisions specifying what property may be claimed as exempt (see *id.* § 522(d)), individual states may opt out of the federal exemption scheme and establish their own. Illinois has exercised that option. See *In re Marriage of Logston*, 103 Ill. 2d 266, 282 (1984); *In re Clark v. Chicago Municipal Employees Credit Union*, 119 F.3d 540, 543 (7th Cir. 1997). Section 12-1201 of the Code of Civil Procedure (735 ILCS 5/12-1201 (West 2016)) provides that residents of this state are "prohibited from using federal exemptions provided in Section 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. 522(d)), except as may otherwise be permitted under the laws of Illinois." What this means is that in federal bankruptcy proceedings, Illinois residents are restricted to exemptions granted by Illinois law. *In re Marriage of Logston*, 103 Ill. 2d 266.

¶ 15        Under Illinois law, exempt property is any property that the legislature has identified and declared to be free from liability to processes such as seizure and sale, or attachment, to satisfy debts. *Id.* at 277. Numerous statutes enacted by the Illinois legislature recognize such exemptions. Some are included in parts 9 and 10 of the Code of Civil Procedure (735 ILCS 5/12-901 to 12-1006 (West 2016)), which deal with homestead exemptions and exemptions for personal property, and explicitly use the word "exemption." Nothing in Illinois law, however, limits allowable exemptions in bankruptcy cases to those contained in the Code of Civil Procedure or those specifically labeled as "exempt." As the bankruptcy courts sitting in Illinois have correctly recognized, no specific wording is required, and the provision's location in the statute books is not dispositive. For purposes of determining whether property is exempt, the critical inquiry is simply whether the provision unequivocally protects the identified property against all forms of collection. See *In re Thum*, 329 B.R. 848, 853-54 (Bankr. C.D. Ill. 2005); *In re Allard*, 196 B.R. 402, 410 (Bankr. N.D. Ill. 1996); *In re McClure*, 175 B.R. at 23-24.

¶ 16        Section 21 of the Act, the provision at issue in this case, meets this test. As noted earlier in this opinion, it provides:

> "No payment, claim, award or decision under this Act shall be assignable or subject to any lien, attachment or garnishment, or be held liable in any way for any lien, debt, penalty or damages, except the beneficiary or beneficiaries of a deceased employee who was a member or annuitant under Article 14 of the 'Illinois Pension Code' may assign any benefits payable under this Act to the State Employees' Retirement System." 820 ILCS 305/21 (West 2016).

There is no ambiguity whatever in this provision. Under its express terms, any payment, award, or decision under the Act is unequivocally free from liability to processes such as seizure and sale, or attachment, to satisfy debts. This is a paradigm exemption under Illinois law. A version of the statute has been in effect and has been so viewed for over a century. See, *e.g.*, *Weber v. Ridgway*, 212 Ill. App. 159, 162-63 (1918); *Lasley v. Tazewell Coal Co.*, 223 Ill. App. 462, 463-64 (1921).[1] Illinois residents seeking relief through federal bankruptcy proceedings are therefore entitled to invoke it.

¶ 17    We turn then to the question of whether the 2005 amendments to section 8 of the Act (820 ILCS 305/8 (West 2016)) and enactment of section 8.2 of the Act (*id.* § 8.2) altered this exemption with respect to debts owed to health care providers. Resolution of this issue is a matter of statutory construction. Proper interpretation of an Illinois statute presents a question of Illinois law. This court is the final arbiter of such questions. *Hampton v. Metropolitan Water Reclamation District*, 2016 IL 119861, ¶ 9.

¶ 18    The principles governing our interpretation of Illinois statutes are well established and familiar. The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the intent of the legislature. The best indicator of that intent is the language used in the statute itself. That language must be given its plain and ordinary meaning. *Bayer v. Panduit Corp.*, 2016 IL 119553, ¶ 18. If the statutory language is clear, it will be given effect without resort to other aids for construction. Courts are not at liberty to depart from the plain language and meaning of a statute by reading into it exceptions, limitations, or conditions the legislature did not express. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 21.

¶ 19    In the case of section 21 of the Workers' Compensation Act, the Illinois General Assembly included one exception in the statute itself. By its terms, the law provides that the "beneficiary or beneficiaries of a deceased employee who was a member or annuitant under Article 14 of the 'Illinois Pension Code' may assign any benefits payable under this Act to the State Employees' Retirement System." 820 ILCS 305/21 (West 2016). The General Assembly has also created an exception to section 21's exemption under section 15(d) of the Income Withholding for Support Act (750 ILCS 28/15(d) (West 2016)). That provision, which applies in the context of child support (*Department of Healthcare & Family Services ex rel. Black v. Bartholomew*, 397 Ill. App. 3d 363, 367 (2009)), provides that " '[i]ncome' means any form of periodic payment to an individual, regardless of source, including *** workers' compensation" and that "[a]ny other [s]tate or local laws which limit or exempt income or the amount or percent of income that can be withheld shall not apply." 750 ILCS 28/15(d) (West 2016).

¶ 20    The foregoing provisions demonstrate that, when the General Assembly intended to create an exception to the exemption established by section 21, it knew how to express that intention in language so clear and explicit that it could not be misunderstood. No similarly explicit exception for claims by health care providers appears in the Workers' Compensation Act itself or in any other Illinois statute. The absence of such language is strong evidence that the legislature did not intend to confer on health care providers the exception to section 21's

[1]Appellate decisions prior to 1935 are not binding authority. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 95 (1996). We cite these earlier decisions merely to illustrate the long-standing nature of the principles under discussion here.

exemption claimed by the Ambulatory Surgical Care Facility, Marque Medicos Fullerton LLC, and Medicos Pain and Surgical Specialists, S.C., in this case. See *5510 Sheridan Road Condominium Ass'n v. U.S. Bank*, 2017 IL App (1st) 160279, ¶ 25.

¶ 21　　The health care providers' claim to an exception to section 21's exemption rests exclusively on the 2005 amendments to section 8 of the Act (820 ILCS 305/8 (West 2016)), which addresses the amount of compensation due employees for accidental injury not resulting in death, and the enactment of section 8.2 of the Act (*id.* § 8.2), which introduced fee schedules limiting the amount providers could collect and employers would be obligated to pay for procedures, treatments, or services covered under the Act. The health care providers do not assert that anything within these provisions can be read as creating an express exception to section 21's exemption. Rather, they contend that an exception for claims by health care providers is *implicit* in the 2005 statutory changes. The exception must be implied, in their view, in order to insure that the fundamental purposes of the Act will not be thwarted, that medical providers will be able to recover the payments they are due for services rendered, that the reach of the scope of section 21 of the Act remains in harmony with modern realities, and that the terms of the 2005 statutory changes are given their intended effect.

¶ 22　　The repeal or amendment of statutes by implication is not favored. Had the legislature intended to alter the clear and unambiguous provisions of section 21 by conferring on health care providers a new exception to the exemption, it would have had to indicate a clear intent to do so. *People v. Johnson*, 2019 IL 123318, ¶ 42. No such intent is manifest in the provisions cited by the health care providers here. As we have just indicated, the 2005 amendments to section 8 of the Act (820 ILCS 305/8 (West 2016)) addressed the amount of compensation due employees for accidental injury not resulting in death, while the then-new section 8.2 (*id.* § 8.2) introduced fee schedules limiting the amount providers could collect and employers would be obligated to pay for procedures, treatments, or services covered under the Act. Neither topic, on its face, bears directly on the question of whether the proceeds of a workers' compensation settlement received by an injured worker should be exempt from claims of medical-care providers who treated the illness or injury associated with that settlement.

¶ 23　　The only aspect of the 2005 amendments that relates to that issue at all is section 8.2(e-20) (*id.* § 8.2(e-20)), which states:

> "Upon a final award or judgment by an Arbitrator or the Commission, or a settlement agreed to by the employer and the employee, a provider may resume any and all efforts to collect payment from the employee for the services rendered to the employee and the employee shall be responsible for payment of any outstanding bills for a procedure, treatment, or service rendered by a provider as well as the interest awarded under subsection (d) of this Section. In the case of a procedure, treatment, or service deemed compensable, the provider shall not require a payment rate, excluding the interest provisions under subsection (d), greater than the lesser of the actual charge or the payment level set by the Commission in the fee schedule established in this Section. Payment for services deemed not covered or not compensable under this Act is the responsibility of the employee unless a provider and employee have agreed otherwise in writing. Services not covered or not compensable under this Act are not subject to the fee schedule in this Section."

It is true, as the health care providers point out, that this provision, by its terms, does now permit health care providers to seek payment directly from an injured employee for outstanding bills plus interest following entry of a final workers' compensation award or judgment or after a settlement agreement is reached between the employer and the employee. Significantly, however, nothing in section 8.2(e-20) permits health care providers to look to the workers' compensation award, judgment, or settlement itself as a source of payment. Pursuant to section 21, those sources remain beyond the providers' reach. Any collection efforts must therefore be directed instead on assets unrelated to the employee's workers' compensation claim. To hold otherwise would place section 21 and section 8.2(e-20) in irreconcilable conflict. Unless we were to read into section 21 a new exception the legislature itself did not express, there is no way the two provisions could be harmonized.

¶ 24     In this regard, we find no merit to the health care providers' contention that carving out an exception to section 21's exemption is necessary to effectuate the purposes behind the 2005 amendments to the Act. It is clear that those provisions, which establish fee schedules and regulate various billing and collection practices, can operate as written without any qualification at all to the express terms of section 21. To be sure, continuing to construe section 21 according to its plain and unambiguous language may make it more difficult for medical providers to obtain full recovery of the amounts they are owed than would otherwise be the case. Weighing such considerations, however, is the responsibility of the legislature, not the courts. If the existing statutory scheme is susceptible to abuse at the expense of medical providers, as the health care providers here charge, that is a matter they must take up with the General Assembly. *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 510 (2006). We must interpret and apply statutes in the manner in which they are written and cannot rewrite them to make them consistent with our own idea of orderliness and public policy. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 406 (2010). That is particularly true with respect to provisions such as section 21, which have been in effect for so long and applied so consistently.

¶ 25     Finally, we reject the health care providers' request that we find that they have "a private right of action to pursue claims for direct payments for their services if necessary" from an employer's workers' compensation insurer and overrule various contrary decisions by the appellate court. That request has no place in this proceeding. The matter is before us on a certified question involving claims against a debtor in bankruptcy. Whether or not the medical providers might subsequently be able to pursue a direct action against the insurance carrier for the debtor's employer is irrelevant to resolution of the bankruptcy proceeding and is not a topic on which the Seventh Circuit needed or requested our view. Any opinion we expressed on the matter would therefore be both advisory and gratuitous.

¶ 26                                        CONCLUSION

¶ 27     For the foregoing reasons, we answer the certified question in the affirmative. Notwithstanding the 2005 amendments to section 8 of the Act (820 ILCS 305/8 (West 2016)) and the enactment of section 8.2 of the Act (*id.* § 8.2), section 21 of the Act (*id.* § 21) *does* exempt the proceeds of a workers' compensation settlement from the claims of medical-care providers who treated the illness or injury associated with that settlement.

¶ 28     Certified question answered.